PAUL B. YOULE, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—88—0005

Opinion filed July 14, 1988.—Rehearing denied August 23, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Richard W. Merrill, Jr., Assistant Attorney General, of Chicago, of counsel), for appellant.

Paul B. Youle, of San Jose, appellee *pro se.*

JUSTICE LUND delivered the opinion of the court:

The Secretary of State (Secretary) appeals the order of the circuit court of Sangamon County. Upon administrative review, the circuit court reversed, in part, the decision of the Secretary denying plaintiff reinstatement of driving privileges, or, in the alternative, a restricted

driving permit. The circuit court ordered that plaintiff be granted a restricted driving permit.

The sole issue on appeal is whether the decision of the Secretary was against the manifest weight of the evidence. For that reason, we must review with some detail the facts in the record.

Plaintiff was arrested on August 26, 1983, for operating a motor vehicle while under the influence of alcohol in violation of section 11—501 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501). Defendant was convicted of the offense on February 17, 1984. Pursuant to section 6—205 of the Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6—205), plaintiff's license was revoked. The revocation became effective March 15, 1984.

Ten months later, on October 15, 1984, plaintiff was arrested for driving while his license was revoked in violation of section 6—303 of the Code (Ill. Rev. Stat. 1983, ch. 95½, par. 6—303). Following his conviction for this offense, plaintiff's period of revocation was extended.

Plaintiff has applied for driving privileges four times since his license was revoked. On May 16, 1985, plaintiff applied for a restricted driving permit. He requested an administrative hearing to consider his application. The Secretary denied his application on August 19, 1985, and plaintiff sought administrative review. The circuit court reversed the decision of the Secretary and ordered the Secretary to issue plaintiff a restricted driving permit. On appeal, we found the Secretary's decision was not against the manifest weight of the evidence and ordered the Secretary's decision reinstated. *Youle v. Edgar* (1986), 144 Ill. App. 3d 1188 (order under Supreme Court Rule 23).

On February 22, 1986, plaintiff applied for reinstatement of full driving privileges. The Secretary again denied plaintiff's request. Plaintiff again sought review by the circuit court. The circuit court affirmed the decision to deny full driving privileges, but granted plaintiff a restricted driving permit. Because plaintiff had not requested a restricted driving permit from the Secretary, we held the circuit court lacked the authority to grant such relief and reversed the circuit court on this point. (*Youle v. Edgar* (1987), 151 Ill. App. 3d 1167 (order under Supreme Court Rule 23).) Following the filing of the mandate from this court, plaintiff sought a restricted driving permit. The Secretary denied the application. Plaintiff did not appeal this decision.

On June 25, 1987, plaintiff requested a fourth hearing to consider a new application for reinstatement of full driving privileges, or, in the alternative, issuance of a restricted driving permit. The hearing was held on July 27, 1987.

Plaintiff was the only witness to testify at the hearing. Plaintiff is a self-employed attorney, and he has his office in his home. He lives in the small rural community of San Jose, a community which has no public transportation. Plaintiff travels within an 80-mile radius of his home in order to make court appearances as part of his law practice. Because he is not allowed to drive, his clients drive him to court. On occasion, he must hire a driver. He testified the absence of a license has hurt him economically. Plaintiff also testified he must make trips to Iowa City, Iowa, some 200 miles from his home, for therapy to his knees. He was injured in World War II, and he has been receiving treatment at the Iowa City Veterans Administration Hospital. In the first half of 1987, plaintiff stated he made two or three trips for treatment. He was able to find someone who would drive him on these occasions.

Plaintiff submitted to an alcohol evaluation on July 20, 1987. Plaintiff discussed his history of alcohol use with the counselor. Plaintiff, age 64, started drinking at age 18. Plaintiff stated that for most of his life, he drank alcohol socially, but not excessively. Plaintiff's drinking increased in the time period following his first divorce in 1966, and through his second marriage, which lasted until 1971. The evaluation indicated that plaintiff had admitted himself to an alcohol treatment program at Lutheran General Hospital in Chicago in February 1967. He remained there for three weeks. Plaintiff stated the purpose of his admittance was for marital problems with his then wife. He denied being an alcoholic although he admitted that he was drinking too much during that time period. Although plaintiff has had only one conviction for driving while intoxicated, plaintiff stated he had been arrested for the same offense on three or four other occasions during the previous 20- to 25-year period. None of these arrests resulted in convictions. As a condition of his conviction for driving while intoxicated, plaintiff was ordered to complete a remedial driver's education course and to attend an alcohol program administered by the Veterans Administration. Plaintiff completed the driver's education course, but did not participate in the alcohol program.

Following his conviction in 1983, plaintiff stated his alcohol consumption dropped to where he would consume alcohol once every two or three weeks. He did this for some 9 to 12 months, and then chose to abstain altogether. Plaintiff stated his motivation to abstain came from a severe migraine headache he received after consuming several beers one night. The counselor rated plaintiff as a "Level III—Problematic User" of alcohol primarily because of his inpatient treatment at Lutheran General Hospital and his increased drinking during the

same period of time. In response to a question as to whether some other "countermeasure" had been recommended for plaintiff, the counselor wrote as follows:

"Mr. Youle had demonstrated 2½ years of sobriety with out [*sic*] the support of treatment and does not appear to be in need of a support system or of on-going counseling."

Plaintiff submitted three affidavits supporting his claim of abstinence. One was from his third ex-wife, who currently resides with plaintiff. The second was from this ex-wife's daughter, also residing with plaintiff. The third was from his secretary.

In his testimony, plaintiff substantiated the information contained in his alcohol evaluation. He denied being an alcoholic. He emphasized his statements that the admission to Lutheran General Hospital was caused by marital problems and not alcohol problems. Plaintiff stated he was currently abstaining from alcohol and that he had had his last drink in the late summer of 1984. He stated that he was not involved in any support program, and that his abstinence was achieved solely by self-will.

The hearing officer recommended that all driving privileges be denied. After reviewing plaintiff's history, the hearing officer stated:

"Given Petitioner's denial of being alcoholic despite evidence classifying him as such, places the Petitioner at risk and warrants specific treatment to address that problem. Merely discontinuing the use of alcohol (abstaining) does not necessarily mean a person has attained 'sobriety' in the sense that A.A. and most in the field of alcoholism treatment view sobriety. When considered in the context of alcoholism, sobriety becomes indicative of an attitude or way of thinking—a manner of living—not simply non-intoxication. Unless and until the alcoholic has attained such sobriety by truly accepting the problem, by not drinking, by by [*sic*] exercising healthy, appropriate behavior and by utilizing available resources for continued outside support, he will feel uncomfortable with not drinking and is in imminent danger of suffering a relapse.

Secretary of State Rules, Section 1001.440(b)3, 92 Ill. Adm. Code, states, in part, that an individual classified as alcoholic/chemically dependent, must prove that he has established an ongoing support/recovery program. The Petitioner presented no concrete evidence at the time of said Hearing, of a support system to help him maintain abstinence."

The hearing officer concluded that plaintiff was an alcoholic because he "exhibited the symptoms of alcoholism," and he had failed to ad-

dress his problem in a responsible manner. Plaintiff had not acknowledged his problem, had not completed treatment, nor had he committed himself to a support program in order to help him maintain abstinence. Therefore, concluded the hearing officer, plaintiff had failed to prove he was a safe and responsible driver; plaintiff was still an unacceptable risk to the public. The Secretary adopted the findings and recommendations of the hearing officer and denied plaintiff his requested relief.

The circuit court, upon administrative review, confirmed the Secretary's denial of full driving privileges. The court reversed the Secretary as to his denial of a restricted driving permit. The Secretary appeals.

■■ On judicial review, the findings and conclusions of the administrative agency on questions of fact are considered to be *prima facie* true and correct. (*Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 731, 498 N.E.2d 295, 300.) As the supreme court stated in *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088:

> "[A] reviewing court is not to reweigh the evidence or make an independent determination of the facts. Rather, its sole function is to ascertain whether the findings of the administrative agency are contrary to the manifest weight of the evidence."

In *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1094, 492 N.E.2d 929, 933-34, we interpreted the manifest weight standard as follows:

> "[I]n order for the circuit court to find the Secretary's decision is against the manifest weight of the evidence, the circuit court must determine, after viewing the evidence in the light most favorable to the Secretary, that no rational trier of fact could have agreed with the Secretary's decision. See *Jackson v. Virginia* (1979), 443 U.S. 307, 324, 61 L. Ed. 2d 560, 576-77, 99 S. Ct. 2781, 2791-92."

In the present case, we are concerned with the circuit court's order requiring the Secretary to issue a restricted driving permit.

■■ One of the requirements for a restricted driving permit is to demonstrate to the Secretary that one will not be a danger to the public safety or welfare. (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(c).) As the supreme court stated in *Murdy*:

> "[T]he relevant inquiry before issuing a restricted driving permit is the danger to the public safety and welfare." *Murdy*, 103 Ill. 2d at 392, 469 N.E.2d at 1089.

■■ ■ The Secretary has issued regulations to guide those seeking the return of their driving privileges following revocation. (92 Ill. Adm. Code 1001.400 *et seq.* (1987).) These regulations have the force

and effect of law. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58, 387 N.E.2d 320, 323; *Agans*, 142 Ill. App. 3d at 1095, 492 N.E.2d at 934.) The regulations give the following definition of the "Level III" classification:

> " 'Level III—Alcoholism/Chemical Dependency' means impairment in one or more of the following areas as a consequence of alcohol and/or drug use: family, social, legal, emotional, vocational, physical, or behavioral functioning. There is an inability to control or stop use and the development of serious withdrawal symptoms after stopping or reducing use. An individual classified at this Level is in the disease/addiction process." (92 Ill. Adm. Code 1001.410 (1987); 10 Ill. Reg. 4558, 4587 (1986).)

An individual classified in the "Level III" category must prove by clear and convincing evidence that he is capable of controlling his problem with alcohol:

> "Applicants classified as alcoholic/chemically dependent (Level III) must document compliance with all recommendations of his/her evaluator and must prove that he/she has established an ongoing support/recovery program." (92 Ill. Adm. Code 1001.440(b)(3) (1987); 10 Ill. Reg. 4558, 4593 (1986).)

Plaintiff was classified as a "Level III" user of alcohol. He chose not to participate in any alcohol prevention support program. Primarily because of plaintiff's failure to comply with this regulation, the hearing officer found plaintiff an unacceptable risk to the public safety. The Secretary adopted this finding.

■■ It is abundantly clear that the Secretary has adopted a program designed to remove intoxicated drivers from Illinois roads and highways. Part of that program is to demand that problematic users of alcohol prove they have a support system that makes them deal with their problem. In light of the carnage on our highways that stems directly from the abuse of alcohol, such regulations are reasonable.

Plaintiff was classified as an individual with a significant alcohol problem. He received the highest rating of alcohol use-abuse. With this rating, the Secretary's regulations require him to show that he belongs to a support program that will help him maintain his abstinence. Plaintiff has supplied proof of abstinence, but he steadfastly refuses to participate in *any* type of support program. He was ordered to participate in an alcohol program administered by the Veterans Administration, but he refused to do so. He has also chosen not to participate in other alternative programs, such as Alcoholics Anon-

ymous. Despite plaintiff's abstinence, the finding of the Secretary that plaintiff is an unacceptable risk because of his refusal to participate in an alcohol prevention support program is not against the manifest weight of the evidence.

Plaintiff attacks the Alcoholics Anonymous support system by stating it is a quasi-religious organization, and, therefore, it is a violation of his constitutional rights to require him to participate in such an organization. This is meritless. The primary function of Alcoholics Anonymous is to cope with the disease of alcoholism. It is a well-recognized support program, in part, because it achieves a measure of success. Moreover, the Secretary does not require participation in Alcoholics Anonymous, but in an ongoing support program. Plaintiff offered no alternative programs.

For the reasons set forth above, the order of the circuit court of Sangamon County is affirmed in part and reversed in part, and the order of the Secretary is reinstated.

Circuit Court affirmed in part and reversed in part; order reinstated.

GREEN, P.J., and McCULLOUGH, J., concur.